W. C. GIVEN, *Commissioner of Banking, etc., et al. v.*
THE WESTERN AND SOUTHERN LIFE INSURANCE
COMPANY *et al.*

(CC 508)

Submitted November 1, 1934.  Decided December
22, 1934.

*Marcum & Gibson,* for plaintiffs.

*Fitzpatrick, Brown & Davis,* for defendant Western & Southern Life Ins. Co.

LITZ, JUDGE:

This suit, instituted by the State Commissioner of Banking and the receiver of Huntington Banking & Trust Company, of Huntington, West Virginia, against Western & Southern Life Insurance Company, of Cincinnati, Ohio, and others, involves the validity of a contract entered into between the Banking & Trust Company and the Insurance Company, April 8, 1922.

The circuit court sustained demurrers to the original and amended bills and certified his rulings thereon to this court for review under Code (1931), 58-5-2.

The contract, after reciting that the Banking & Trust Company desires to submit notes or bonds secured by mortgages to the insurance company for purchase, provides that the bank "shall act as correspondent for the company in the County of Cabell, State of West Virginia, for the purpose of submitting loans secured by notes or deeds of trust for sale to the company and shall act as agent in the collection of principal and interest as they become due and payable on such notes as may be purchased"; that "all loans offered by the correspondent" shall be in the form of notes or bonds secured by first lien upon real estate, insured by title policies accompanying the other loan papers; that the expenses in connection with the "purchasing and transferring of any loans" shall be paid by the bank; that "all loans must be closed and all sums of money necessary for that purpose advanced by the correspondent, and the necessary papers recorded before submitting them to the company"; and that "upon acceptance of the loan by the company and receipt and approval of all the papers pertaining thereto, the company shall send remittance to the correspondent." The contract requires the correspondent to collect the principal and interest of the loans and to render other services in connection therewith, including the employment of coun-

sel to protect the company in the event of foreclosure proceedings or court actions, whenever necessary. It also stipulates: "If any of said mortgage loans are not paid in full as to principal and interest, when due, or in case of any other default in the conditions thereof, the Correspondent shall have the privilege either of repurchasing same and to pay therefor the amount of the principal then unpaid together with all accrued and unpaid interest and any other costs or expenses properly chargeable thereto, or of exchanging such delinquent loans, without expense to the Company, for other mortgage loans of substantially like amount drawing the then prevailing current interest rate, provided same be not less than six per cent, and which shall be satisfactory to and meet the approval of the Company; but in any such case the Company may elect which of such alternate privileges the Correspondent may exercise; and provided further that in any event the Company, within six (6) months after accepting any loan or loans from the Correspondent, if after inspection of the properties upon which said loan or loans are secured the Company considers such loan or loans unsatisfactory, may require the Correspondent without expense to the Company to substitute other loans in substantially like amount which are acceptable to the Company and bear interest at the then prevailing current interest rate, same however to be not less than six per cent."

The original and amended bills show: On January 16, 1928, defendant, Prichard School (a non-profit corporation), executed a series of negotiable notes, aggregating $100,000.00, payable to the insurance company over a period of years and secured by deed of trust on real estate in Cabell County, West Virginia; thereafter, the bank "undertook to negotiate a sale of said notes" to the insurance company "and did bring about such a sale and did deliver the said notes to" the insurance company and thereafter received for the account of the Prichard School the proceeds thereof; default having been made in the payment thereof, the bank repurchased from the insurance company, in accordance with the terms of the

contract, ten of said notes for the face value, including interest, of $32,421.94; subsequent defaults having been made in the payment of some of the remaining notes, all have become due and payable by virtue of an accelerating clause in the deed of trust; by reason whereof, the property covered thereby, has been advertised for sale at the instance of the insurance company. The bills also charge that the contract of April 8, 1922, by virtue of which the bank undertook to guarantee the payment of said notes, is illegal and void; and pray that the said contract be cancelled, the trustee enjoined from selling the property until further order of the court, and the notes held by the bank preferred in the application of the security.

Want of authority on the part of the bank to guarantee negotiable paper is alleged as the basis for the relief sought. The validity of the charge depends upon the following legislation.

By Chapter 28 (Acts 1891), trust companies were granted authority to engage in a general banking business; "to make insurance of every kind pertaining to or connected with titles to real estate * * * to buy, sell and guarantee bonds, loans and evidences of indebtedness, whether of persons or corporations, and make, execute and perfect such and so many contracts, agreements, policies and other instruments as may be required therefor;" to issue insurance for the fidelity of persons holding places of responsibility and trust; to become surety in any case where by law one or more sureties may be required for the faithful performance of any trust, office, duty, action or engagement; to act as surety for the faithful performance of any contract entered into with any person, firm or corporation, or with any state or government or public authority by any person or persons, corporation or corporations; to become surety for the faithful performance of the duties of any officer, clerk or employee of any corporation (other than of a municipal corporation), firm or person; and to become surety upon the bond in any writ of error, supersedeas or appeal. By Chapter 85, Acts 1901, all of the above enumerated pow-

ers were retained and others added. By Chapter 7, Acts 1903, it was provided that no trust company engaged in the banking business shall be accepted as surety on any bond or undertaking required in any of the courts of this state, or shall become surety or guarantor for any individual, firm or corporation, for the faithful discharge of duty in any position, or for the performance of any contract, except as provided in section one of the act, which authorizes trust companies "to buy, hold, sell and guarantee bonds, stocks, loans and evidences of indebtedness, whether of persons, or corporations, and make, execute and perfect such and so many contracts, agreements and other instruments as may be required therefor." By Chapter 80, Acts 1919, the Act of 1903 was amended without changing the provision authorizing trust companies "to buy, hold, sell and guarantee bonds, stocks, loans and evidences of indebtedness", etc. Chapter 23, Acts 1929 (re-enacted substantially in Code 1931, 31-4-9), provides: "No banking institution shall become or be accepted as surety on any bond or undertaking required by the laws or by the courts of this state or any other state, or shall become surety or guarantor of any person, firm or corporation, for the discharge of any duty in any position or for the performance of any contract or undertaking."

It will thus be observed that, from 1891 to 1929, trust companies, doing a banking business, were authorized "to buy, hold, sell and guarantee bonds, stocks, loans and other evidence of indebtedness." So that, whether the bank sold the notes to the insurance company, as the contract and bill would seem to indicate, or assumed liability thereon as guarantor, it is legally bound to the extent of its undertaking.

There can be no doubt that the statute authorizes the bank to become liable for the payment of negotiable paper that it does not own. It is liable by operation of law for the payment of negotiable paper it owns and transfers. The statute, therefore, necessarily contemplates that the bank may assume the payment of indebtedness in which it has no interest. "Guarantee" is defined in Bouvier's Law Dictionary as follows: "He to whom a

guarantee is made. Also, to make oneself responsible for the obligation of another." Webster's definition is: "To be a guarantee, warranty or surety for; especially to undertake to answer for the debt, default or miscarriage of another; to become responsible for the fulfillment of the agreement of another."

The bill charges that the contract between the bank and the insurance company was irregularly executed by the president of the bank without previous authority. The trial court properly held that the bank had, by acting thereunder, ratified the contract.

Counsel for plaintiffs urge that the notes held by the bank should be given preference in the application of the proceeds from the property covered by the deed of trust under the general rule that the assignees of choses in action partake of the lien attached thereto in the order of their assignment. As the bank is liable for the payment of all the notes, it will not be permitted to participate in the proceeds of sale under the deed of trust until the remaining notes in the hands of the insurance company are paid; or, as expressed by counsel for the insurance company, "if the contract of July 8, 1922, validly imposed upon the bank the obligation to repurchase the notes, clearly the repurchased notes by the bank are subordinate to those of" the insurance company.

We see no reason for applying an exception in this case, as urged by counsel for plaintiff, to the general rule that the receiver of an insolvent bank succeeds only to the rights of the bank, as of the time of his appointment.

The ruling of the circuit court is affirmed.

*Affirmed.*