## Harr, Secretary of Banking, Appellant, *v.* Market Street Title and Trust Company.

Argued January 4, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Gerald F. Flood,* with him *Willis Daniels,* Special Deputy Attorneys General, *Joseph V. Somers* and *Charles J. Margiotti,* Attorney General, for appellant.

*John Stokes Adams,* with him *Randolph W. Childs,* of *Adams, Childs, McKaig & Lukens,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 22, 1937:

The plaintiff, as receiver for the Merion Title and Trust Company of Ardmore, seeks to recover the sum of $7,500 as the face amount, and also the interest due upon a mortgage trust fund certificate alleged to have been issued under date of June 1, 1929, by the defendant, Market Street Title and Trust Company, which sub-

sequently merged with the Integrity Trust Company. The certificate stands in the name of George W. Weldy, who was the trust officer of defendant, and who assigned it as collateral for a loan to the Merion Title and Trust Company. The defendant denies liability upon the certificate, alleging that no consideration was paid for it, and that it was fraudulently issued by its trust officer.

The facts are not in dispute and appear from the evidence as follows: By declaration of trust dated November 16, 1928, the Market Street Title and Trust Company created a mortgage trust fund account. Under the terms of this declaration the company authorized its trust officer to receive deposits of money to be invested in first mortgages and to issue to the depositors for the amount of their respective deposits guaranteed mortgage trust fund certificates.

The certificate here in suit was one of the mortgage trust fund certificates so authorized. It recited that Weldy had deposited $7,500 with the company, which sum was to be held by it, together with other sums similarly received, in a separate mortgage trust fund, and invested by the company. It set forth that the company would collect the interest accruing on the mortgages so purchased, and would pay therefrom interest on the fund deposited, at the rate of 5% per annum to the registered owners of the certificates. After providing for certain compensation, it expressly set forth the guarantees of the company (1) to pay the interest until maturity, and (2) to pay the principal sum represented by the certificate at the end of five years from the date it was issued. The certificate was transferable only by assignment upon the books of the company in Philadelphia, by the person to whom the same was issued or by his duly authorized attorney or legal representative.

After the merger of the two trust companies on February 28, 1930, Weldy was retained by the Integrity Company as a trust officer, at the office previously occupied by the Market Street Title and Trust Company,

where he had custody of the mortgage certificate book. This was a bound book of certificates, each certificate having a stub from which it could be detached, and contained 248 certificates. Prior to the merger 63 certificates only had been issued.

On or about September 1, 1931, Weldy removed certificate No. 248, the one here in suit, with its corresponding stub from the book of certificates. He obtained the signature of R. G. Moore, the former Vice-president of the Market Street Title and Trust Company, and then filled in his own name as depositor upon the face of the certificate. He forged upon it the name of the Secretary of that company, and affixed its corporate seal, dating the certificate back to June 1, 1929. Finally, as trust officer, he duly certified upon the certificate its registration in his name. He did not however register the certificate on the books of the company, and destroyed the stub of the certificate in an effort to prevent discovery of the fact that it had been fraudulently issued.

On September 1, 1931, Weldy delivered the certificate, together with an assignment thereof executed by him, to the Merion Title and Trust Company of Ardmore, as collateral security for a loan of $5,500 made by that bank to him at the time. On October 28, 1931, the Secretary of Banking entered into possession of the Merion Title and Trust Company, and included among the assets of that closed bank was the certificate here in question. Upon the maturity date of the certificate the Secretary demanded payment thereof by defendant. Payment was refused, whereupon as Receiver he instituted this suit.

At the trial the court below directed a verdict for defendant, overruled plaintiff's motion for judgment non obstante veredicto, and subsequently entered judgment on the verdict in favor of defendant. Plaintiff has taken this appeal from the refusal of his motion for judgment.

Since there is no controversy as to the facts, the question presented here is whether the rights of plaintiff as

the bona fide holder of the certificate can rise higher than those of Weldy, the assignor of the certificate, or whether the claim upon the certificate is subject to all the defenses existing between the original parties thereto.

Plaintiff earnestly contends that the defendant is precluded from setting up as a defense the fraud of Weldy, and the absence of consideration, because Weldy was the agent of the defendant. It argues that his act in issuing the certificate must be treated as that of the defendant, which is bound by the representations of fact contained in the certificate and relied upon by plaintiff taking it as a bona fide holder for value.

Our attention has been called to cases[1] in which recovery has been allowed to the innocent holders of certificates for the capital stock of a corporation, where the certificates have been fraudulently or negligently issued by the officers of the company. It is urged that the same principle should be applied to the present case of a mortgage trust certificate. We are not convinced that the facts of the present case call for the application of that principle. Here we have an obligation of a corporation for the payment of money. It is different in its nature from a certificate for shares, which is evidence of ownership of an interest in the capital stock of the corporation. The change of stock ownership is governed by established rules not applicable to other documents, particularly to obligations calling for the payment of money. (See Uniform Stock Transfer Act of May 5, 1911, P. L. 126.) It seems to us that the cases dealing

---

[1] *Mt. Holly Paper Co.'s App.*, 99 Pa. 513; *Kisterbock's App.*, 127 Pa. 601; *Dollar Sav. Fund & Tr. Co. v. Pitts. Plate Glass Co.*, 213 Pa. 307; *Greensburg T. & T. Co. v. Aspinwall-Delafield Co.*, 266 Pa. 160; *Krall v. Lebanon Valley Sav. & Loan Assn.*, 277 Pa. 440; *Bank of Ky. v. Schuylkill Bank*, 1 Pars. 180; *Allen v. So. Boston R. R. Co.*, 150 Mass. 200, 22 N. E. 917; *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 N. Y. 30; *Cincinnati Ry. Co. v. Citizens' Nat. Bank*, 56 Ohio 351.

with fraudulently issued certificates of stock are to be distinguished from the present case, where the real question is whether the corporation can set up against the assignee of its non-negotiable promise for the payment of money the defenses which it has against the assignor of the instrument.

The certificate upon which this suit is brought is not negotiable. This convincingly appears from the face of the certificate itself. Not only is it not payable *to order or bearer* as required by Section 1 of the Negotiable Instruments Law (Act of May 16, 1901, P. L. 194, Chap. I, Art. I, Section 1), but it is transferable only by assignment upon the books of the defendant by the person to whom it was issued, or his duly authorized attorney. Such a requirement is the negation of negotiability. Moreover, the certificate requires, as we have seen, the performance of specified acts by the promisor in addition to the payment of money, which also impairs its negotiability.

Since the certificate is not negotiable, this action in assumpsit to recover upon it can be maintained in the name of the plaintiff (the assignee) only by virtue of the rights conferred upon him by the Act of May 28, 1715,[2] and plaintiff's suit must encounter and satisfactorily answer all the defenses of the defendant obligor available against the original depositor obligee, in like manner as if no assignment of the certificate had been made. In other words, every defense against Weldy is

---

[2] The Act of May 28, 1715, 1 Sm. L. 90, Sec. 3 (8 Purd. Stat., Sec. 33), provides as follows:

"It shall and may be lawful for the person or persons, to whom the said bonds, specialties or notes are assigned, indorsed or made over as aforesaid, in his, her or their own name or names, to commence and prosecute his, her or their actions at law, for recovery of the money mentioned in such bonds, specialties or notes, or so much thereof as shall appear to be due at the time of such assignment, *in like manner as the person or persons to whom the same was or were made payable might or could have done.*"

available to defendant against this instrument in the hands of an assignee of Weldy, or subsequent holder of it, provided that such defense is based on facts existing at the time of the assignment, or arising thereafter prior to knowledge of the assignment by the defendant. The right of plaintiff to commence and prosecute this action in his own name for the recovery of the money mentioned in the certificate may be exercised only, as the Act says, "in like manner as the person or persons to whom the same was or were made payable might or could have done." It is clear, therefore, that plaintiff can prosecute this action only in like manner as Weldy could have done, and his claim is subject to all the defenses available to defendant as against Weldy, the assignor of the certificate.

The principle of law is well established that an assignee of a non-negotiable specialty bringing suit in his own name who fails to make inquiry of the obligor is subject to the defenses which the obligor might set up against the assignor: *Rundle v. Ettwein,* 2 Yeates 23; *Lane v. Smith,* 103 Pa. 415; *Janes v. Benson,* 155 Pa. 489; *Myerstown Bank v. Roessler,* 186 Pa. 431; *Volk v. Shoemaker,* 229 Pa. 407; *Levy v. Gilligan,* 244 Pa. 272; *Allinger v. Melvin,* 315 Pa. 298; *Gordon, Secty. of Banking, v. Anthracite Tr. Co.,* 117 Pa. Superior Ct. 544. See also Restatement of Contracts, Section 167, which is in conformity with these cases.

In our opinion the fraud of Weldy in the issuance of the certificate and the fact that he paid no consideration for it, are defenses available to defendant in this action, and constitute a complete bar to recovery by the plaintiff.

The order of the court below is affirmed at the cost of appellant.