Land Title Bank and Trust Company, Trustee, *v.* Schenck (et al., Appellants).

Land Title Bank and Trust Company, Trustee, *v.* Strauss (et al., Appellants).

Land Title Bank and Trust Company, Trustee, *v.* Robinson (et al., Appellants).

420

Argued January 9, 1939. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*C. Russell Phillips,* with him *Montgomery & McCracken,* for appellants, Nos. 433 and 105.

*Andrew R. McCown,* of *Shields, Clark, Brown & McCown,* with him *Jno. Randolph Young,* for appellants, Nos. 71, 72 and 73, and appellees, Nos. 433 and 105.

*Earl G. Harrison,* with him *Harry E. Sprogell,* and *Saul, Ewing, Remick & Saul,* for appellees, Nos. 71 and 73.

*Stanley Folz,* of *Sundheim, Folz & Sundheim,* with him *Morton P. Rome,* for appellee, No. 105.

*Thomas Raeburn White,* with him *Thomas R. White, Jr.* and *Alexander R. Staples,* for appellee, Nos. 71 and 72.

*Thomas Burns Drum* and *Ballard, Spahr, Andrews & Ingersoll,* for successor-trustee, appellee, Nos. 433, 71, 72, 73 and 105.

OPINION BY MR. JUSTICE BARNES, June 19, 1939:

These five appeals were argued together, and may be disposed of in one opinion. They involve three proceedings in equity to foreclose three first mortgages, each indenture being given to secure an issue of first mortgage bonds. The actions are entirely independent, but the questions raised in each case are substantially the same. The mortgages were secured respectively upon three parcels of real estate in the city of Philadelphia, known as the Aquila Apartments, the Wynnefield Apartments, and the Oak Lane Towers Apartments. The foreclosures proceeded to sales of the properties, which were purchased in each case by a committee representing bondholders who had deposited their bonds under a plan of reorganization. The foreclosure decrees provided that deposited bonds might be accepted on account of the purchase price of the mortgaged premises. The sales were duly confirmed by the court below, subject to the determination of the question in each proceeding whether all the bonds of a particular issue are upon a parity, so that the holders thereof are entitled to participate and to share pro rata in the fund before the court for distribution. The question so reserved is the fundamental issue of each case.

The payment of principal and interest of the bonds of the three issues was guaranteed in writing by the Philadelphia Company for Guaranteeing Mortgages

(hereafter referred to as Philadelphia Company). This guarantee was printed on the back of each bond, or was set forth in a separate policy accompanying it, and reads as follows: "The Philadelphia Company guarantees to the registered holder . . . payment of interest together with principal as soon as collected but in any event within eighteen months after the same shall have become due."

The Philadelphia Company was a Pennsylvania corporation with its principal office in the City of Philadelphia, and was engaged in the business of guaranteeing the payment of principal and interest of mortgages, and of mortgage bonds. It also acted as trustee of mortgage bond issues. From the agreed stipulation of facts in each case it appears that the general practice of the Company was to furnish and maintain a ready market for such mortgages and bonds, purchasing them at par or at discount, and reselling them to the general public, which it did in the present cases.

On January 11, 1933, receivers were appointed for the Philadelphia Company by the United States District Court at Philadelphia. Subsequently under a plan of reorganization, a new corporation was created called the Mortgage Service Company of Philadelphia, to which the assets of the Philadelphia Company were transferred under a trust indenture dated July 1, 1935, for the use, benefit and protection of creditors and stockholders of the defunct company.

While the same questions are involved, the facts of each case require separate consideration:

IN THE MATTER OF THE AQUILA APARTMENTS.

No. 433 January Term, 1938.

No. 71 January Term, 1939.

As of May 15, 1925, Julius Schenck et al. executed an indenture of mortgage to the Philadelphia Company

as trustee, to secure an issue of 200 Six per cent gold bonds each in the principal sum of $500, aggregating $100,000 due on May 15, 1928. The mortgaged premises were known as the Aquila Apartments, situated at the southeast corner of 48th and Sansom Streets, Philadelphia. All of the bonds were registered and were guaranteed by the Philadelphia Company in the form stated. Subsequently their maturity date was extended to May 15, 1931. The entire issue was bought by the Philadelphia Company, which marketed them to various purchasers.

Prior to May 15, 1928, bonds to the amount of $10,000 were paid off and cancelled, reducing the outstanding bonds to $90,000. Over a period of approximately three years following, the Philadelphia Company repurchased $45,000 face amount of bonds, and resold during that time $20,000 thereof, so that on December 1, 1931, it had on hand $25,000 of these repurchased bonds. On this date, which was after the extended maturity of the bonds but before the eighteen months' period of guarantee had expired, it pledged with the Pennsylvania Company for Insurances on Lives and Granting Anuities (hereafter referred to as the Pennsylvania Company), $10,000 principal amount of bonds as collateral security for a loan.

On February 4, 1932, likewise after the maturity date of the bonds but before the expiration of the guarantee date, the Philadelphia Company pledged $10,000 of bonds with the Real Estate-Land Title and Trust Company (now Land Title Bank and Trust Company), as collateral for a loan. These loans remain unpaid and the bonds are now owned by the Mortgage Service Company as "Operating Trustee" liquidating the assets of the Philadelphia Company, subject, however, to the loans and pledges mentioned, and in addition thereto it holds the remaining $5,000 of unsold bonds free and clear of pledge.

The owner of the mortgaged property failed to pay the interest due on November 15, 1932, whereupon the Philadelphia Company made the payment under its guarantee. Subsequently other defaults having occurred, a substituted trustee under the mortgage indenture instituted the present foreclosure proceeding, resulting in a public sale of the mortgaged premises and the purchase thereof by the bondholders' committee. The property was conveyed to a corporation organized for the purpose, called the Aquila Apartments, Inc.

It was stipulated of record that upon the dates when the bonds were hypothecated neither of the pledgees mentioned had notice or knowledge of any defaults under the terms of the mortgage securing the bonds, other than the fact that the principal thereof had matured.

---

## IN THE MATTER OF WYNNEFIELD APARTMENTS
### No. 72 January Term, 1939

The mortgage upon the Wynnefield Apartments, which are situated at the southeast corner of 51st Street and City Avenue, Philadelphia, was executed as of November 2, 1925, by Harry R. Strauss to the Philadelphia Company as trustee. It secured an issue of 150 Six per cent gold bonds of the denomination of $1,000 each, aggregating $150,000 in principal amount. These bonds matured in five annual series of $5,000 each, beginning November 2, 1930, with a sixth and final series of $125,000 falling due November 2, 1935. All the bonds were registered, and were guaranteed as to principal and interest by the Philadelphia Company, which issued to purchasers thereof its separate guaranty policy. The guarantee is substantially in the form stated, but with the addition of clauses pertaining to certain bonds, not material to the present question.

These bonds were not purchased by the Philadelphia Company at the time of issue, but were sold to the pub-

lic by an investment company. However, the Philadelphia Company furnished a market for them in accordance with its practice in respect to bonds which it guaranteed. Over a three year period from 1928 it repurchased $40,000 of the bonds and resold to the public $30,000 thereof. The remaining $10,000 of bonds were unsold, and upon March 21, 1932, were pledged with the Real Estate-Land Title and Trust Company as part collateral for a loan. Of the bonds so pledged, $5,000 thereof had matured on November 2, 1930, and the balance of $5,000 matured on November 2, 1931, but the period of guarantee had not then expired. The loan was not repaid, and the bonds in question are now owned by the Mortgage Service Company as "Operating Trustee" subject, however, to the pledge. The owner having defaulted under the mortgage, a substituted trustee instituted the present foreclosure proceeding which resulted in a public sale of the mortgaged premises and the purchase thereof by a bondholders' committee. The property was conveyed to a corporation organized for the purpose, called the Wynnefield Apartments, Inc.

The parties agree that the pledgee bank had no notice or knowledge of any defaults under the indenture of mortgage on March 21, 1932, when the bonds were deposited as collateral for the loan, other than that serial maturities due November 2, 1930, and November 2, 1931, were unpaid.

---

### IN THE MATTER OF OAK LANE TOWERS APARTMENTS

Nos. 73 and 105 January Term, 1939

On May 15, 1929, Robert A. Robinson executed a mortgage to the Philadelphia Company as trustee upon the Oak Lane Towers Apartments, situated at the southeast corner of 13th Street and 68th Avenue North Philadelphia, to secure an issue of 360 Six per cent gold bonds,

in the principal amount of $500 each, aggregating $180,000, and maturing upon May 15, 1932. The bonds were registered and guaranteed as to payment of principal and interest by the Philadelphia Company, in the form stated.

The entire issue of bonds was purchased by the Philadelphia Company and sold to the general public. It repurchased from time to time $42,500 of these bonds, and resold to the public $29,000 thereof, with $13,500 of bonds remaining on hand at the time receivers were appointed on January 11, 1933.

On October 1, 1931, prior to their maturity date, there was pledged with the Pennsylvania Company unsold bonds of the face amount of $12,500 as part collateral for a loan. The loan remains unpaid. The balance of $1,000 of bonds, free of pledge, is held by the Mortgage Service Company as "Operating Trustee" for the purpose of liquidation as stated.

The owner of the mortgaged property defaulted in the payment of the principal of the bonds due on May 15, 1932, and also failed to pay the interest due on November 15, 1932, whereupon the interest payment was made by the Philadelphia Company under its guarantee. Subsequently by reason of other defaults, a substituted trustee of the mortgage indenture instituted the present foreclosure proceeding, which resulted in a public sale of the mortgaged premises, and the purchase thereof by a bondholders' committee, the property being conveyed to the Oak Lane Towers Apartments, Inc.

---

It is apparent, therefore, from the foregoing facts as stipulated in the three proceedings that the Philadelphia Company, in the person of its assignee the Mortgage Service Company, is the present owner, *free of pledge,* of $5,000 face amount of Aquila bonds, and of $1,000 of Oak Lane Towers bonds; that it owns, *subject to pledge,* $20,000 of the Aquila bonds, $10,000 of

the Wynnefield bonds, and $12,500 of the Oak Lane Towers bonds.

When the accounts of the substituted trustee were before the court below for audit, and for distribution of the three funds arising from the foreclosure sales of the properties, the present question arose whether the bonds of the Mortgage Service Company were subordinated to other bonds of the same issue held by purchasers. It was contended that such bonds, both free and subject to pledge, were ineligible to participate in the reorganization sales and to share pro rata in the funds for distribution.

The court below, sitting in banc, ruled that the bonds which were pledged for value were on a parity with other bonds of the same issue and were entitled to participate in the reorganization of the properties and in the distribution of the funds, while bonds free of pledge were subordinated in the hands of the assignee of the insolvent guarantor. From the final decrees accordingly entered, these appeals have been taken by the Mortgage Service Company, by the three corporations organized to take title to the properties, and by various individual bondholders.

The first question concerns the status of the free or unpledged bonds owned by the Mortgage Service Company, as assignee for creditors of the Philadelphia Company. It is argued in each case that such bonds should be excluded from participation in the fund for distribution until the outstanding guaranteed bonds have been paid in full, as the proceeds of the mortgage security are insufficient to satisfy all the bonds of the issue.

This contention is based upon the rule consistently followed in this state, which denies to the guarantor under such circumstances the right to compete in distribution with those to whom he has guaranteed full payment of the debt: *Worrall's Appeal*, 41 Pa. 524; *Fourth National Bank's Appeal*, 123 Pa. 473; *North*

*City Trust Co. Case,* 327 Pa. 356.[1]  For example, where the holder of an obligation secured by collateral transfers for value fractional interests in the obligation to various assignees, and guarantees full payment of all such participating shares, if the proceeds of the collateral upon liquidation are insufficient to satisfy the obligation secured thereby, any interest retained or repurchased by the guarantor is subordinated to the rights of all the other outstanding guaranteed fractional interests, upon distribution of the fund realized from the collateral.  See *Agricultural Trust and Savings Co.'s Mortgage Pool Case,* 329 Pa. 581.

This is the prevailing rule of our cases in the absence of a clearly expressed and unmistakable intention of the parties to the contrary.  It is based upon equitable principles governing distribution which precludes a debtor who is insolvent from diverting to his own use a fund which he owes to his creditors.  In equity and good conscience a guarantor can make no claim upon a fund with respect to which he has guaranteed the rights of others, when the assertion of such a claim would be incompatible with the terms of the guarantee.

We recently said in *North City Trust Co. Case,* supra, (p. 360) : "It is well settled that where the proceeds of collateral are insufficient to pay the obligations se-

---

[1] See cases in New York Court of Appeals as follows: *Title Guarantee and Trust Co. v. Mortgage Commission of State of New York,* 273 N. Y. 415 (1937); *In the Matter of Title and Mortgage Guaranty Co. of Sullivan Co.,* 275 N. Y. 347 (1937).

For cases in other jurisdictions see: *Carson, Trustee v. Nuzman,* 117 Kan. 395, 232 Pac. 242 (1925); *Louisville Title Co.'s Receiver v. Crab Orchard Banking Co.,* 249 Ky. 736, 61 S. W. (2d) 615 (1933); *Fidelity Trust Company Receiver v. Orr,* 154 Tenn. 538, 289 S. W. 500 (1926); *First National Co. v. State-Planters Bank & Trust Co., Trustee,* 164 Va. 491, 180 S. E. 281 (1935); *Given, Commissioner v. Western and Southern Life Ins. Co.,* 115 W. Va. 727, 177 S. E. 777 (1934).  See contra, *Kelly v. Middlesex Title Guarantee & Trust Co.,* 115 N. J. Eq. 592, 171 Atl. 823, affirmed 116 N. J. Eq. 574, 174 Atl. 706.

cured thereby, the holder of a portion of such obligations is entitled to the proceeds thereof, to the exclusion of his insolvent pledgor, who is liable over to such pledgee . . . The rule is based upon equitable considerations to prevent injustice and avoid circuity of action." To the same effect still more recently we said in Agricultural Trust and Savings Co's Mortgage Pool Case, supra, (p. 586) : "Where, however, as in this case, the assignor also stands in the position of debtor to the assignees, in relation to the fund or transaction from which the relationship arises, equitable principles require that the claim of the assignor be postponed until the claims of such assignees are paid in full."

These principles are determinative of the status of the free bonds in the present cases, since there is no provision in the guarantees which in our opinion indicates an intention to reserve to the Philadelphia Company the right to participate in the proceeds of the foreclosure sales on a parity with the holders of the guaranteed bonds. A review of the records before us and consideration of the able briefs of counsel fail to afford sufficient reasons for a departure from our well settled principles governing the subject, and the decree of the court below that the unpledged bonds in each case held by the Mortgage Service Company should be subordinated to the outstanding guaranteed bonds of the same issue must be sustained.

The remaining question is whether the bonds pledged with the banks are entitled to share ratably in distribution with other bonds of the same issue in the hands of purchasers. It will be recalled that the Aquila and Wynnefield bonds had matured at the time they were pledged as collateral for the loans made by the banks, but the period of guarantee had not then expired, while the Oak Lane Towers bonds were pledged prior to their maturity.

In our opinion the bonds pledged *before their due date* are upon a parity with bonds of the same issue

purchased by their holders before maturity, and they are not subject to subordination. There can be no doubt that such is their rightful legal status upon distribution. As stated in the briefs, "they are, to the extent of the pledge, entitled to share *pari passu* with bonds in the hands of an ordinary purchaser." Here the bank, a pledgee for value, occupies the same position as a purchaser, to the extent of the lien acquired by the pledge: *King v. Mellon Natl. Bank,* 227 Pa. 22; *Maryland Cas. Co. v. Natl. Bank & Trust Co.,* 320 Pa. 129; *Miles v. Centennial Natl. Bk.,* 90 Pa. Superior Ct. 341.[2] It is not asserted that the bank was upon notice of any equitable defense, or infirmity in the obligation itself, at the time of the pledge, which would even give rise to a question of subordination. Therefore equality in distribution cannot be denied to them.

The principal attack is directed against the bonds pledged with the banks *after maturity.* It is strongly urged that they are not upon the same plane with those held by purchasers, or with bonds pledged before maturity. The reason assigned is that these pledgees were charged with notice of default in payment of the bonds at their maturity, and with knowledge that bonds belonging to the guarantor-pledgor then became subordinated if the mortgage security proved to be insufficient. This subordinated status, it is contended, was not changed by the subsequent pledge of the bonds, but was retained when they passed into the hands of the pledgees.

It seems to us that this reasoning fails to give consideration to fundamental principles bearing upon the question. The general rule, so often reiterated in our decisions is, as we said in *North City Trust Co. Case,* supra, (p. 359), "where fractional parts of the same obligation are assigned to different persons, and the proceeds realized from collateral security are insuffi-

---

[2] See *In re Lawyers Title & Guaranty Co.,* 1 N. Y. Supp. (2d) 264, 266.

cient to satisfy the claims of all the assignees, the assignees share in the security pro rata." See also *Donley v. Hays,* 17 S. & R. 400; *Mohler's App.,* 5 Pa. 418; *Perry's App.,* 22 Pa. 43; *Hancock's App.,* 34 Pa. 155; *Hodge's App.,* 84 Pa. 359; *Moore's App.,* 92 Pa. 309; *McLean & Jackson's App.,* 103 Pa. 255; *Patrick's App.,* 105 Pa. 356.

The doctrine of subordination is the exception to this rule. As we have seen, it is based upon equitable considerations which deny to an insolvent assignor, liable over to assignees secured by the same fund, the right to share equally with them in its distribution, in respect to any retained or repurchased interest in the obligation. Here the pledgees are not within the scope of the exception to the rule, as obviously they have no liability over to the purchasers of the bonds, which would give rise to special equities in favor of the latter. Therefore unless there is some equitable ground which justifies a departure from the general rule, the principle of pro rata distribution must be applied. We can see no reason why the pledge of bonds for value after their maturity creates an equity in favor of bonds purchased prior to maturity, that requires the subordination of the pledged bonds.

The bonds issued under the terms of these mortgage indentures are non-negotiable securities, as they were required to be registered: *Novoprutsky v. The Morris Plan Co.,* 319 Pa. 97. Their legal status remained unchanged at maturity, as they were from the date of issue subject to all the defenses and equities that could be asserted between the original parties thereto: *Harr, Secty. v. Market St. Title and Trust Co.,* 326 Pa. 410. But in the present cases it is not a matter of defenses between the original parties, or of those who claim under them, but of the rights as between themselves of assignees, who are the purchasers and pledgees of portions of the same obligation, to share in a particular fund. For that reason the fact alone that the bonds

had matured at the time of their pledge is not determinative of the question of parity, as maturity effected no change in the status of any of these bonds. "There is no pertinent analogy," as the court said, between a negotiable note and a non-negotiable mortgage bond, insofar as maturity may affect the rights of the holders thereof.

We are in accord with the view expressed by the court below that "no new equity attaches from the mere fact of the maturity" of these bonds, or that they were pledged after their due date. No other reason is advanced to defeat their right to share pro rata in distribution, since it appears that the pledgees had no notice of any facts existing at the time of the pledge, which would give rise to equities in favor of the purchasers of bonds. They cannot be said to have had knowledge that the bonds would not ultimately be paid by the mortgagor, or that the Philadelphia Company would default upon its contracts of guarantee at the expiration of the eighteen months' grace period. They cannot be charged with knowledge that the proceeds of the foreclosures of the mortgaged properties would be insufficient to satisfy all the bonds secured thereby.

The pledges having been made in good faith and for value, without any special equities intervening to justify an exception to the general rule of ratable distribution, the conclusion follows that the pledged bonds stand upon the same footing with bonds purchased before maturity, and they must share equally in the funds.

In No. 433 January Term, 1938, and No. 71 January Term, 1939, the decree of the court below is affirmed. Costs to be paid by appellants and divided equally between them. In No. 72 January Term, 1939, the decree of the court below is affirmed. Costs to be paid by appellants and divided equally between them. In Nos. 73 and 105 January Term, 1939, the decree of the court below is affirmed. Costs to be paid by appellants and divided equally between them.