## Philadelphia Company for Guaranteeing Mortgages Case.

Argued April 21, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas Raeburn White*, with him *Thomas Raeburn White, Jr.*, of *White & Staples*, for appellant, No. 111.

*C. Russell Phillips*, with him *Montgomery & Mc-Cracken*, for appellant, No. 113.

*Andrew R. McCown*, with him *John Randolph Young* and *Shields, Clark, Brown & McCown*, for appellee.

*Louis J. Goffman*, for appellee, Secretary of Banking.

OPINION BY MR. JUSTICE PATTERSON, May 12, 1941:

These appeals involve the status of appellants, Land Title Bank and Trust Company and Mortgage Service Company of Philadelphia, as holders of certificates of

participation in a mortgage, on distribution of the fund realized upon foreclosure and sale of the mortgaged premises.

The Philadelphia Company for Guaranteeing Mortgages, on March 8, 1929, acquired, by assignment, a mortgage and bond executed by one Albert Aiken, secured upon premises 816-820 South 47th Street, Philadelphia, and conditioned for the payment of the sum of $100,000 on June 24, 1930. On the same date, the Philadelphia Company executed a declaration of trust, agreeing to act as trustee for holders of certificates of interest in the mortgage. It was provided that certificates of a par value of $100,000 should be issued, but that certain of these, having a par value of $10,000 and not involved on these appeals, should be subordinated in payment of interest and principal to the others. All the certificates were guaranteed, in writing, by the Philadelphia Company, as follows: "Philadelphia Company for Guaranteeing Mortgages guarantees to the registered holder or holders of the within Certificate of Interest, the payment of interest, as and when due, together with the principal sum as soon as collected, but in any event within eighteen months after the same shall have become due under the terms of the said mortgage bond."

In 1929, the Upright Building and Loan Association, which held a $60,000 second mortgage upon the premises, instituted foreclosure proceedings and purchased the property. The first mortgage became due on June 24, 1930, and the mortgagor defaulted in the payment of the principal. The guarantee of the certificates expired on December 24, 1931, according to its terms, and the trustee-guarantor likewise defaulted. Thereafter, on January 7, 1932, the trustee-guarantor agreed to a three-year extension of the mortgage under Article XV of the trust agreement, which provided that this might be done "without the consent of the holders of the Certificates of Deposit", and certain of the certificate holders, including Emily Logue, the appellee, surrendered

their certificates for notation thereon of the extension and of their acceptance of notice thereof.

On January 15, 1932, the trustee-guarantor, which company had maintained a market for the certificates, had in its hands, as owner, certificates of a par value of $37,300, one of which, having a face value of $30,000, was on that day pledged to Land Title Bank and Trust Company, in consideration of the release of other collateral of like amount given to the Bank by the trustee-guarantor to secure a debt of $967,000 and a contingent obligation of $480,000. Receivers were appointed for the trustee-guarantor on January 11, 1933, and its assets, including the remaining certificate for $7,300, were assigned to the Mortgage Service Company of Philadelphia, as operating trustee. The pledged certificate for $30,000 was subsequently exposed for sale and purchased by the Bank.

On March 24, 1934, the Building and Loan Association defaulted on the extension agreement and possession of the mortgaged premises was taken by the Integrity Trust Company, as substituted trustee of the mortgage. At a private sale of the premises, the sum of $75,000 was realized, and the court below, in proceedings upon the substituted trustee's first account, ordered a partial distribution, reserving consideration of the status of the certificates now owned by the operating trustee of the guarantor and by the Bank. The Secretary of Banking, as receiver of the substituted trustee, on May 22, 1940, filed a second and final account and a petition for confirmation and for discharge of the substituted trustee. Answers were filed and, after hearing, the court below held that the certificates owned by the Bank and by the operating trustee of the guarantor were subordinate in status to all other certificates held by the public, except those expressly subordinated by the trust indenture, and decreed that distribution be made accordingly. These appeals by the Bank and by the operating trustee followed.

The principles of law which admittedly control in the situation presented by the appeals are clearly enunciated and discussed at length in Land T. Bk. & Tr. Co. v. Schenck, 335 Pa. 419, and were recently reiterated in Land T. Bk. & Tr. Co. v. Baron, 341 Pa. 241; hence, it is unnecessary to restate them here. As to the contention that the court below erred in according a subordinated status to the certificate held by the operating trustee, we think the Schenck case provides a complete answer and, as the arguments now advanced by the Mortgage Service Company are substantially the same as were advanced in its behalf on the former appeals, they may be disposed of briefly.

The provision of Article XVI of the trust agreement, empowering the trustee-guarantor to "become the owner" of any or all of the certificates in its individual corporate capacity, does not even purport to determine the status of such certificates in the event of default and distribution. Under the circumstances presented, therefore, this provision could confer no right upon the guarantor, or upon its operating trustee, which stands in no better position, to compete in distribution with those to whom it has guaranteed full payment of the certificates, counter to what is, as was pointed out in the Schenck case, at page 428, "the prevailing rule of our cases *in the absence of a clearly expressed and unmistakable intention of the parties to the contrary"*. Plainly Article XVI supplies no such "clearly expressed and unmistakable intention". Similarly, we find no justification for a departure from the usual rule as to the certificate in the hands of the operating trustee because here certain certificates were designated as "subordinate" in the trust agreement, from which it is sought to be inferred that all other certificates were intended to share equally in distribution, regardless of ownership. Since the subordinated status of the certificate held by the operating trustee is created, not by contract, but by operation of law, the fact that other certificates

not here involved may be subordinate to it, under the terms of the trust, is immaterial. Accordingly, we all agree that the certificate of the operating trustee must be subordinated to all others of the same class, including that held by the Bank.

While the certificate of the appellant Bank stands in a somewhat different category, and its status must be determined by the conditions existing at the time of the pledge, we are of opinion that its subordination was likewise proper. On the date of the pledge, not only had there been a default in the payment of the principal of the mortgage since its due date, June 24, 1930, but the guarantor had likewise defaulted upon its obligation of guarantee at the expiration of the grace period, on December 24, 1931, eighteen months thereafter. Here the guarantee involved no ambiguity such as that found in the Baron case, but was absolute and unqualified; consequently, no demand by the certificate holders was necessary to fix this liability. At the time this certificate was pledged with the Bank, the rights of appellee and other certificate holders similarly situated had, therefore, already attached. Had the guarantor retained the certificate, thus tainted by its default, its status would have been subordinate in distribution to those other certificates whose holders were, at the time of such default, entitled to full payment. The pledgee took it with this knowledge, and the defaults of the mortgagor and guarantor were apparent. In accepting the pledge under these circumstances, the Bank took the certificate subject to the equities already existing in favor of the holders of other certificates.

While it is true that the trustee-guarantor had the power, under the trust instrument, to extend the mortgage, it failed to do so until after the eighteen months' grace period had expired. As the guarantor was then already in default on its unconditional contract of guarantee, that the mortgage was *subsequently* extended cannot, in our opinion, affect the status of the certificates

in distribution. Nor do we find any substantiation in the record for the contention that appellee and other certificate holders "consented" to the extension of the mortgage by permitting notice thereof to be endorsed upon their certificates. The endorsement merely recites that *"Notice is hereby accepted* by the holder" of the extension of the mortgage. Moreover, the consent of the certificate holders was unnecessary under the trust agreement, and there is no evidence that it was given. And, even if it had appeared that these holders had "consented" to the extension, no waiver of their rights against the guarantor could be implied, for Article XV of the deed of trust, which authorizes the trustee to grant such extensions, expressly provides that "No such extension or extensions or change or alteration shall *in any manner* modify or affect or alter the obligations of the guaranty of principal and interest."

That part of the decree awarding the balance remaining after payment of the unsubordinated certificates to Mortgage Service Company and Land Title Bank and Trust Company *pro rata* is modified to direct that the certificate in the hands of Mortgage Service Company be subordinated in the distribution of such balance to that of the Land Title Bank and Trust Company; as so modified, the decree is affirmed. Costs to be paid by appellants.