Keasbey Trust.

Argued May 28, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Benjamin O. Frick,* with him *James H. Egan* and *Rodney T. Bonsall,* for executor of life tenant under inter vivos trust, appellant.

*Victor J. Roberts,* for trustee under will, appellee.

*Aaron S. Swartz, Jr.,* and *John Russell,* for trustee under deed of trust, appellee.

*N. Warren Benedetto,* in propria persona, and *Horace N. Lombardi,* for guardian and trustee ad litem.

OPINION BY MR. JUSTICE DREW, June 25, 1946:

The primary question here is whether there is money in the testamentary trust of Henry G. Keasbey which properly belongs to his trust inter vivos. The Orphans' Court of Philadelphia and Montgomery Counties have held there was not. Appellant, executor of a life tenant under both trusts, contends the learned courts were in error in this respect, and took these appeals.

The facts are complicated but not disputed. In settlement of litigation which arose in 1928, Henry G. Keasbey and Doctor Richard V. Mattison determined to sever their business relationship. They were associated together in Keasbey & Mattison Company, a corporation, in which each was the owner of 50% of the capital stock. Mattison purchased Keasbey's shares for the sum of $3,900,000 of which $750,000 was paid in cash, and the balance $3,150,000 by the delivery of Mattison's bond. The bond was secured by the deposit in escrow of 10,000 shares of each of the preferred and common stock, the entire outstanding shares of the Keasbey & Mattison Company, representing the one-half interest then owned by Mattison and the one-half interest which he was purchasing from Keasbey. The bond for $3,150,000 was dated January 11, 1929, and called for six payments of $500,000 on January 25 of each year thereafter, and the final payment of $150,000 on January 25, 1936, all with interest at 6%.

Keasbey on January 16, 1929, executed an irrevocable deed of trust to the Fidelity-Philadelphia Trust Company wherein he conveyed: (a) All his right, title and interest

"to the extent of . . . ($2,000,000.) in the principal sum of . . . ($3,150,000.), secured by the bond of Richard V. Mattison, M.D., to Settlor, dated January 11, 1929, being the four instalments of the said principal sum of, . . . ($500,000) each, due under said bond on January 25, 1931, January 25, 1933, January 25, 1934, and January 25, 1935"; (b) all his right, title and interest "in and to all the interest required to be paid by the terms of the said bond of Richard V. Mattison, M.D., to Settlor, dated January 11, 1929, on the entire principal sum of . . . ($3,150,000.) secured by said bond, and on each and every part thereof"; and (c) some other securities in the principal amount of $25,000, not here material. The net income, including "the interest required to be paid by the terms of the bond . . . on the entire principal sum . . . and on each and every part thereof", was to be paid as follows: ½ to Marguerite Anna Keasbey, daughter, for life; ¼ to Helen Keasbey Frischkorn, daughter, for life; and ¼ to Henry Turner Keasbey, son, for life. At their respective deaths the net income was payable to their survivors in certain proportions, and upon the death of the last survivor, the principal was to be paid to named persons and institutions.

On the principal of his indebtedness, Mattison paid $500,000 to Keasbey (being the installment due on January 25, 1930, which the latter had reserved to himself) ; and $500,000 to the trustee (being the installment due on January 25, 1931, which Keasbey had assigned to Fidelity-Philadelphia Trust Company, as trustee under his deed) ; and he also paid interest to the trustee due to April 1, 1931, on the entire principal sum of the bond. No further payments of principal or interest were made by Mattison.

On June 2, 1931, Mattison became insolvent and on that date he and his wife made an assignment of all his assets in trust to the First Trust Company of Philadelphia for the benefit of all his creditors. This was not an

assignment under the Act of June 4, 1901, P. L. 404, but to maintain the status quo. At that time Mattison owed on the bond a balance of principal of $2,150,000, of which amount he owed Keasbey $650,000, and the inter vivos trust $1,500,000, and there was payable to that trust all interest due on $2,150,000. Keasbey died on May 30, 1932, a resident of Montgomery County, and his will, appointing Fidelity-Philadelphia Trust Company as executor and residuary trustee, was probated in that county.

Keasbey & Mattison Company was thereafter reorganized and Mattison Estates, Inc. was created for the purpose of liquidating the personal assets of Mattison which he had assigned for the benefit of his creditors. As a result of this plan, Fidelity-Philadelphia Trust Company exchanged the Keasbey & Mattison stock held as collateral for 6655 shares of stock in that company, as reorganized, and for 1467 shares of stock in the liquidating company of Mattison Estates, Inc. The trust company allocated to the principal of the inter vivos trust and the testamentary trust these shares of stock on the basis of the principal sums owing by Mattison to each at the time he made the assignment for the benefit of his creditors [1] as follows: 4643 shares of Keasbey & Mattison Company and 1023 shares of Mattison Estates, Inc. to the inter vivos trust; and 2012 shares of Keasbey & Mattison Company and 444 shares of Mattison Estates, Inc. to the testamentary trust. From the sale of the new stock of Keasbey & Mattison Company the Fidelity-Philadelphia Trust Company, as trustee of both

---

[1] Total principal due by Mattison—$2,150,000, of which he owed $650,000 to testamentary trust and $1,500,000 to inter vivos trust. Thus the calculation made by the trustee was as follows 650,000/2,150,000 or 13/43 of 6655 (Total shares of Keasbey & Mattison Company stock, as reorganized, received by trust company) and of 1467 (Total shares of Mattison Estates, Inc., also received) equal 1023 and 444 shares, respectively, allotted to testamentary trust; 1,500,000/2,150,000 or 30/43 of 6655 and 1467 equal 4643 and 2012 shares, respectively, allotted to inter vivos trust.

trusts, received the net sum of $1,049,693.15; and from that of Mattison Estates, Inc. it received liquidating dividends to the time of the adjudication rendered in the testamentary trust in the Orphans' Court of Montgomery County in the total sum of $447,426. Of the total sum thus received, the trustee debited to the principal of the inter vivos trust $1,044,346.39, and to principal of the testamentary trust $452,772.76.

On December 14, 1938, Helen Keasbey Frischkorn, one of the life tenants under both trusts, died. All of the moneys obtained by Fidelity-Philadelphia Trust Company, as trustee of these estates, from the sale of the Keasbey & Mattison Company stock and as liquidating dividends from Mattison Estates, Inc. (with the exception of the installments of liquidating dividends received from the shares of Mattison Estates, Inc. on March 11, 1939, and thereafter, totalling $80,691) were received prior to the death of Mrs. Frischkorn. It was because of her death the trustee filed its account under the deed of trust in the Orphans' Court of Philadelphia County, and also its account under the will in the Orphans' Court of Montgomery County.

At the audit of the account filed in the inter vivos trust in the Orphans' Court of Philadelphia County, the executor of the deceased life tenant contended that the proceeds of the Mattison bond allocated to that trust should be applied to the interest required to be paid under the bond, before any application was made to the principal of the trust, for the reason that, according to the terms of the trust deed such interest was to be considered income; and in the alternative he argued that there should be a proper apportionment between principal and income of the entire fund realized from the salvage operation. The auditing judge held (1) that the claim by the estate of the deceased life beneficiary for a preference with respect to interest was untenable, and so dismissed the claim; (2) that there must be an apportionment of the proceeds of the Keasbey

& Mattison Company stock, as well as of that of Mattison Estates, Inc., as between principal and income within the inter vivos trust, under the authority of *Nirdlinger's Estate (No. 2)*, 327 Pa. 171, 193 A. 30; (3) that the division made by the trustee of these proceeds as between the trust inter vivos and the trust under the will of the deceased settlor was proper; (4) that the death of the life tenant prior to receipt of a certain liquidating dividend of Mattison Estates, Inc., did not deprive the life tenant's estate of the right to an apportionment of said dividend; and (5) that, in calculating the aforesaid apportionments, an interest rate of 4% should be used, rather than 6% which was the rate stipulated in the bond which was the basis of the trust.

Exceptions were filed by the executor of the estate of Mrs. Frischkorn, the deceased life tenant, by the trustee under the deed of trust, and by the guardian ad litem of minor remaindermen. The court en banc being of the opinion that before the relative rights of the life tenant and the remaindermen under the trust inter vivos could be determined, it should be made certain that the total proceeds received from the sale of the stock of Keasbey & Mattison Company and as liquidating dividends from Mattison Estates, Inc. had been properly divided between the trust inter vivos and the testamentary trust, and that the former trust had received all moneys to which it was entitled. The court said that this matter could be determined only in the Orphans' Court of Montgomery County where the account of the testamentary trustee was then pending because, while the Orphans' Court of Philadelphia County could surcharge the trustee under the deed for any excess improperly paid to the testamentary trust, the Montgomery County Orphans' Court alone could make the necessary order on the testamentary trustee if it found that some of the proceeds in question allocated to that trust should be returned to the trust inter vivos. The court further said: "We have considerable doubt concerning the ac-

countant's action in ignoring the right of the inter vivos trust to apportionment with respect to 'interest' on the entire obligation and in accepting the division solely on the basis of the principal claims . . . As a matter of procedure . . . it seems unwise and impractical to consider surcharging a fiduciary for failure to prosecute a legal claim, when proceedings involving the claim itself are pending before a court of competent jurisdiction which can adjudicate all phases of the question in dispute. Since the excess, or overpayment, if any, is in the testamentary trust, for which an account is presently pending in Montgomery County, a majority of the Court is of opinion that we should suspend confirmation of the adjudication and direct the trustee of the trust inter vivos to present a claim against the testamentary trustee for the alleged excess or overpayment." For that reason, the learned court did not pass upon the merits of the adjudication, but dismissed all exceptions filed "pro forma". From the order thus made the executor of the estate of the deceased life tenant appealed to this Court, and we quashed that appeal, on the ground that no appeal would lie from an order suspending proceedings for a temporary period (*Keasbey's Trust Estate,* 342 Pa. 439, 20 A. 2d 281).

Thereafter at the audit of the account of the testamentary trustee in Montgomery County, the executor of the estate of Mrs. Frischkorn, the deceased life tenant; and the Metropolitan Museum of Art, a beneficiary under the deed of trust inter vivos, filed exceptions; and, as directed by the order of the Orphans' Court of Philadelphia County, the trustee of the inter vivos trust made claim to recover part of the funds received from the sale of the stock of Keasbey & Mattison Company and from the liquidating dividends of Mattison Estates, Inc. and apportioned to the testamentary trust. These exceptions and the claim of the trustee raise the same question that there was an overpayment to the testamentary trust. The learned auditing judge in the Orphans' Court

of Montgomery County held that the division of the proceeds as made by the trustee between the testamentary trust and the inter vivos trust was proper, and, therefore, he dismissed all exceptions and rejected the claim of the trustee of the inter vivos trust. This action was confirmed absolutely by the court en banc.

The account of the trustee of the inter vivos trust then came before the Orphans' Court of Philadelphia County for reconsideration. The auditing judge held that "There has been no change in the status of any of the parties in interest, and the questions involved which were previously considered and decided are the same. My original views with respect to these questions, which are fully set forth in the prior adjudications, have not changed in the least, and there is nothing which I now care to add to what was said at that time. Whether or not the opinion of Judge HOLLAND [the auditing judge of the account in the testamentary trust in Montgomery County], wherein he decided (as I did) that the division as between this trust and the testamentary trust was proper, renders that question *res judicata,* is a moot point which I do not intend to discuss or pass upon in this adjudication. I have ruled that the apportionment mentioned was proper. An exception to that ruling will bring the matter squarely before the Court *en Banc* and, if the *res judicata* feature is material, it can be argued and decided at that time." The court en banc confirmed absolutely this readjudication, holding, inter alia, that the decision of the Montgomery County Orphans' Court was res judicata as to the division of assets received from the salvage operation between the trust inter vivos and the testamentary trust.

The executor of the deceased life tenant's estate thereupon took these appeals—one from the final decree of the Orphans' Court of Montgomery County, and the other from the final decree of the Orphans' Court of Philadelphia County.

Appellant contends that the unpaid interest on the bond was a prior claim upon the proceeds received by

the trustee of the two trusts from the salvage operation and should have been allocated to the inter vivos trust before any allocation to the principal of these trusts. This contention is based on the fact that in the deed of trust, Keasbey set forth that he was assigning to the inter vivos trust "all the interest required to be paid by the term of the said bond" of Mattison, and that "for the purposes of this deed all interest required to be paid by the terms of the bond . . . on the entire principal sum . . . is to be considered income." We are not impressed with this argument. Keasbey used this phraseology in his deed merely as a direction that all interest on the bond was to be paid to the trustee of the inter vivos trust and that he reserved none to himself, in contrast to the division of the principal in two portions —the larger amount to be paid to the trust, and the smaller to be paid to himself. It was also his intent that all interest which was required to be paid by the bond was to be treated as income of the inter vivos trust. It was not his intention that such interest should be guaranteed or made up for the life tenants out of principal of the portion assigned to the trust or that retained by him, in the event the interest was not actually paid.

In the alternative appellant argues that even if his contention that the unpaid interest on the bond is a prior claim upon the entire proceeds of the salvage operation is unsound, nevertheless the division of the moneys received out of the disposition of the collateral by the trustee between the two trusts on the basis of principal owing by Mattison only is erroneous, for the reason that such allocation ignores the interest due to the inter vivos trust under the trust deed. A careful examination of the facts and circumstances of the case has convinced us that the division made was proper.

Both trusts were holders of fractional parts of Mattison's obligation on his bond. At the time he became insolvent and made an assignment for the benefit of his creditors, he was indebted to Keasbey in the principal

sum of $650,000 (upon which no interest was due to Keasbey) ; and he was indebted to the inter vivos trust in the principal sum of $1,500,000, as well as for interest at the rate of 6% from April 1, 1931, on this total indebtedness of $2,150,000. This condition prevailed at the time of Keasbey's death, when Mattison's indebtedness to him passed into his testamentary trust. From the sale of the collateral, which secured the two portions of the debt, a fund was realized by Fidelity-Philadelphia Trust Company, as trustee of both trusts, which was clearly insufficient to pay the principal owing or any interest.

Appellant concedes the trustee received all possible in the salvage operation and that no interest was paid after April 1, 1931. Merely because trust estates are the creditors involved and the trust company is acting in a dual capacity as trustee for each, does not alter the character of the issue or raise any question which would not be involved between them if they were individuals. Whether or not the pro rata distribution between the trusts should be based solely upon their respective principal claims (as decided by the Orphans' Court of Montgomery County), or should include interest, (as contended by appellant), must be ascertained under the rules for distributing assets of an insolvent debtor among his creditors. The doctrine laid down by this Court in *Nirdlinger's Estate (No. 2)*, supra, has no bearing in determining what would be a proper division of the money received by the trustee between the two trusts. As was correctly stated by the auditing judge of the Orphans' Court of Montgomery County: "When the trustee of the Deed of Trust has received what it is entitled to, then and then only does the principle of *Nirdlinger's Estate, supra,* apply as between the principal and income beneficiaries of that trust."

It is well settled that where fractional parts of the same obligation are assigned to different persons, and the proceeds realized from the collateral security are insufficient to satisfy the claims of all the assignees, the

assignees share in the security pro rata: *Land T. Bk. and T. Co. v. Schenck,* 335 Pa. 419, 6 A. 2d 878. Under such conditions, where, as here, Fidelity-Philadelphia Trust Company, as trustee for both trust estates, realizes in disposing of the collateral, following the debtor's insolvency and assignment for the benefit of his creditors, all that possibly could be realized, and yet obtained insufficient to satisfy the principal amounts due, it would be inequitable to allow interest on either claim after such insolvency. And this is true even though one creditor's claim carries interest and the other none at all. While some considerable time elapsed from the time of the assignment and the actual sale of the collateral and distribution of the fund received, nevertheless no one should gain an advantage or suffer a loss as a result, for such delay was due solely to the usual difficulties of collection, liquidation and distribution. See *American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway,* 233 U.S. 261.

We are convinced, as was the auditing judge and the court en banc of the Orphans' Court of Montgomery County and the auditing judge of the Orphans' Court of Philadelphia County, that the division between the two trusts, as made by Fidelity-Philadelphia Trust Company, on the basis of principal only, was just and proper.

Whether or not there is any merit in the contention of appellant that the Orphans' Court of Philadelphia County erred in holding that the decision of the Orphans' Court of Montgomery County, on the division on the basis of principal only, was res judicata, is of no moment now, because in considering these appeals from those counties we have here decided that such division was correct.

The Orphans' Court of Philadelphia County fully recognized the interest of the life tenant in the inter vivos trust, and properly has given her estate the full benefit of an equitable apportionment of the proceeds

received from the disposition of the collateral and allocated by the trust company to that trust, under the doctrine of *Nirdlinger's Estate,* supra. In determining the rate of interest so to be allowed in calculating the loss of the life tenant, that court committed no error in deciding that the rate for the period of the salvage operation was 4%, the current rate of return on trust investments.

Decrees affirmed; costs in each appeal to be paid by the respective estates.