J-A04045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

E.R.,

      Appellee

      v.

D.D.,

      Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1505 WDA 2015

Appeal from the Order Entered August 6, 2015
In the Court of Common Pleas of Elk County
Civil Division at No(s): 2007-673

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                **FILED MAY 2, 2016**

Appellant, D.D. ("Mother"), appeals *pro se* from the order of the Court of Common Pleas of Elk County in this child custody matter, in which E.R. ("Father") received additional physical custody of the parties' daughter, P.E.R. ("Child").  We affirm.

We summarize the history of this case as follows.  Mother and Father were married on October of 2005 and separated in May of 2007, when Mother was several months pregnant with Child.  Child was born in January of 2008.  Father then filed for visitation.  Mother agreed to the visitation and the parties eventually divorced.  Father has since remarried.  Mother resides in Emporium, Pennsylvania, and Father lives in St. Marys, Pennsylvania.

In March of 2011, the trial court entered a custody order directing that Mother would have physical custody of Child (then three years old) from

10:00 a.m. on Monday until 12:00 p.m. on Thursday, and Father would have physical custody of Child from 12:00 p.m. on Thursday until 10:00 a.m. on Monday. On November 30, 2012, Father filed a petition to modify custody. On March 12, 2013, the parties stipulated to the entry of a court order setting out in detail the periods of custody each parent would receive.[1] Although the basic weekly time frame for custody was not altered by the trial court's order, it did set forth greater detail regarding custody for vacations and holidays, and provisions for travel and transportation. Paragraph six of the court order provided as follows: "6. The parties agree that [Child] shall attend the St. Marys Area School District commencing in kindergarten and Mother will relocate to St. Marys Area School District." Custody Order, 3/12/13, at 9.

On October 14, 2014, Mother filed a *pro se* petition to modify custody in which she sought primary physical custody of Child and permission to relocate Child to an Emporium school in Cameron County. In her petition, Mother alleged that she did not have the financial capacity to move to St. Marys. Petition to Modify Custody, 10/14/14, at 2. In addition, in paragraph four of her *pro se* petition, Mother stated the following: "4. [Mother] has been driving [Child] to and fro[m] school daily and is under financial strain to continue to afford to drive this far daily[.]" ***Id***.

_____

[1] Both parties were represented by counsel at the time the stipulation was accepted by the trial court and reduced to an order.

The parties participated in court-ordered custody evaluations. The matter eventually proceeded to a custody hearing before the Honorable Richard A. Masson, President Judge of Elk County, on June 23, 2015. On August 6, 2015, the trial court entered an order modifying physical custody in favor of Father and keeping Child in her current school district. On August 11, 2015, the trial court authored a detailed opinion setting forth its general findings of fact and its statutory-factor findings. Mother filed this *pro se* appeal on September 2, 2015. The trial court did not direct Mother to file a Pa.R.A.P. 1925(b) statement. The trial court filed a Pa.R.A.P. 1925(a) opinion on September 25, 2015.

Prior to discussing the substantive issues raised by Mother on appeal, we first consider Father's contention that Mother's appeal should be quashed or dismissed because of Mother's failure to comply with provisions of the Pennsylvania Rules of Appellate Procedure relating to the filing of the notice of appeal in family fast track cases. Father's Brief at 4-5. We have reviewed the record before us and observe that Mother has failed to fully comply with the Pennsylvania Rules of Appellate Procedure, as alleged.[2] Although this Court may dismiss or quash an appeal based upon an

---

[2] Specifically, it has been alleged that Mother's appeal failed to comply with Pa.R.A.P. 904(a) (relating to the proper form of the notice of appeal) and (f) (explaining the notice of appeal should advise the appellate court that the appeal is a children's fast track), and Pa.R.A.P. 906(a) (relating to service of notice of appeal).

appellant's failure to follow the Pennsylvania Rules of Appellate Procedure, because her violations have not hampered the presentation of the appeal to this Court, and we are able to discern the issues raised by Mother on appeal, we decline to dismiss or quash in this instance. *In re J.F.*, 27 A.3d 1017, 1019-1020 (Pa. Super. 2011). *See also Wilkins v. Marsico*, 903 A.2d 1281, 1285 (Pa. Super. 2006) (deciding issues raised on appeal by *pro se* appellant because, "[d]espite the numerous defects in his brief, we are able to identify [a]ppellant's issues"). Thus, we will proceed with our review.

In her *pro se* brief, Mother presents the following issues for our review, which we reproduce verbatim:

1. Whether or not the trial committed an error in law and or abused its discretion by taking the appellants custody time away when even the father wanted to keep the previous order the same?

2. Whether or not the trial committed an error in law or abused its discretion by making finding of facts that was contrary to the sufficient evidence or testimony presented?

3. Whether or not the trial committed an error in law or abused its discretion by ignoring the findings and report by Daniel Keysor, the clinical custody evaluator and not having him present in court but allowing the plaintiff to argue the report and aluding to a prior relationship between the appellant and the evaluator?

4. Whether or not the trial committed an error in law or abused its discretion by not giving the proper weight to all thje factors that are in the best interest of the child?

5. Whether or not the trial made an error in law or abused its discretion by giving more time to the father or appellee after he admitted in court to using alcohol with methadone and Percocet, and the evaluator finding an addiction?

Mother's Brief at 4.

Initially, we observe that Mother's *pro se* brief fails to conform to multiple rules of appellate procedure pertaining to the construction of appellate briefs. In particular, Pennsylvania Rule of Appellate Procedure 2119 addresses the argument section of appellate briefs and provides, in part, as follows:

> **Rule 2119. Argument**
>
> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have…such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures*, 4 A.3d 1099, 1103 (Pa. Super. 2010) (citing *Commonwealth v. Hardy*, 918 A.2d 766 (Pa. Super. 2007)).

Although Mother lists a total of five issues in her statement of the questions presented, we observe that the argument portion of Mother's brief is not divided into as many parts as there are questions to be argued because the argument portion is not divided into any distinctive segments. Mother's Brief at 9-13. Even more disconcerting is the fact that the argument portion of Mother's brief does not contain meaningful discussion of relevant legal authority. *Id*. at 10-13. Rather, the argument section of Mother's brief consists of general statements as she sees the facts of this case and lacks any legal discussion or analysis. This lack of analysis hinders meaningful appellate review. Accordingly, because Mother's arguments on her issues fail to set forth any meaningful discussion of relevant legal authority, we could conclude that her issues are waived. However, we decline to do so in this instance and we will proceed with a guarded analysis of Mother's overarching claim of trial court error.

Issues one, two, four, and five presented by Mother essentially address the concerns that the trial court failed to properly weigh the evidence and apply the statutory factors in making its custody determination. Because she has presented these issues in a single argument section of her brief, we likewise address her claims regarding these issues in a single discussion.

At the outset, we observe that, as the custody hearing in this matter was held on June 23, 2015, the Child Custody Act ("the Act"), 23 Pa.C.S. §§

5321 to 5340, is applicable. ***See C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F.***, 45 A.3d at 443 (citation omitted).

We have stated:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006). Moreover, in ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338. Section 5338 provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338.[3]

_____

[3] Section 5323 of the Act provides for the following types of custody awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

*(Footnote Continued Next Page)*

Section 5328(a) sets forth the best-interest factors that the trial court must consider. ***E.D. v. M.P.***, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011). Specifically, section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

*(Footnote Continued)* ───────────────

23 Pa.C.S. § 5323(a).

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[4]

_____

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1), providing for consideration of child abuse and involvement with child protective services. Although
*(Footnote Continued Next Page)*

Mother argues that the trial court erred in failing to properly consider various facts in reaching its custody decision and in weighing the evidence presented. Mother's Brief at 10-13. In a rambling fashion Mother contends that the trial court failed to consider testimony about how well she cares for Child, how she takes Child to church, the bond that Mother has with Child, Father's admission to taking prescription drugs and drinking alcohol, and Father's alleged lying to make himself appear as a better parent. *Id*.

We have reviewed the briefs of the parties, the certified record, the relevant law, and the opinion filed by the trial court on August 11, 2015. It is our conclusion that the trial court thoroughly considered the facts as provided at the custody hearing and fully considered the statutory factors required pursuant to 23 Pa.C.S. § 5328(a). Trial Court Opinion, 8/11/15.[5] Thus, the trial court adequately considered the favorable relationship and bond that exists between Mother and Child and the negative aspects

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

applicable at the time of the custody hearings in this matter, there was no evidence that would have required the trial court's consideration of this factor.

[5] We note that it appears that the trial court inadvertently failed to list the fourth factor in its opinion dated August 11, 2015. Said factor asks the trial court to consider "[t]he need for stability and continuity in the child's education, family life and community life." Although the trial court did not enumerate factor four in its opinion, it did address the substance of the factor in its decision. Trial Court Opinion, 8/11/15, at 11-12. Hence, we are satisfied that the trial court adequately considered factor four in making its custody determination.

pertinent to Father as alleged by Mother. Likewise, our review reflects that the trial court contemplated the favorable aspects of Father's relationship and contact with Child, and the negative aspects pertinent to Mother. As the trial court effectively concluded, "Despite the want of substantial cogent and compelling evidence, both parents are undoubtedly positive parental forces in [Child's] life and are expected to continue to promote her best interest in the future by continuing to maintaining [sic] constant contact with her." *Id*. at 13. Hence, we discern no abuse of discretion on the part of the trial court in reaching its decision to have Child remain at her school in St. Marys School District and in altering the custody arrangement by granting Father custody during the school week. Therefore, we adopt the trial court's thorough analysis of the statutory custody factors as presented in its opinion of August 11, 2015, and we conclude that Mother's contrary claims lack merit.[6]

In issue number three, Mother argues that the trial court erred in failing to have Daniel Kysor, the licensed psychologist who prepared a report for the trial court, present at the custody hearing. Mother's Brief at 10. Essentially, Mother asserts that because Mr. Kysor was not present at the custody hearing, the trial court may have failed to properly consider his recommendations.

_____

[6] The parties are directed to attach a redacted copy of the August 11, 2015 opinion in the event of further proceedings in this matter.

It is accepted that under Pa.R.C.P. 234.1, a party may subpoena another person to attend a hearing. Furthermore, it is axiomatic that a party must make a timely and specific objection to a procedure in order to preserve the issue for appellate review; otherwise, the party's failure to object results in waiver of the claim. *M.O. v. J.T.R.*, 85 A.3d 1058, 1061 (Pa. Super. 2014) (citing *Fillmore v. Hill*, 665 A.2d 514 (Pa. Super. 1995); *Smith v. Smith*, 637 A.2d 622 (Pa. Super. 1993)).

Here, our review of the record reflects that neither party sought to subpoena Mr. Kysor to ensure his presence at the custody hearing. In addition, our review reveals that the trial court accepted Mr. Kysor's report into evidence without objection from either party. Specifically, the trial court stated the following when it admitted Mr. Kysor's report into evidence:

> THE COURT: It will be admitted as Court Exhibit 1. There was no objection lodged by either party to the admissibility of Mr. Kysor's summary or the results of his evaluation. So, that will be marked as Court Exhibit 1 and admitted.

N.T., 6/23/15, at 9. If Mother wanted to challenge the admission of the report and lack of Mr. Kysor's presence at the hearing, she should have done so at the custody hearing. Thus, Mother's failure to object to the admission of the report, even though Mr. Kysor was not present at the hearing, results in waiver of any challenge to its admissibility and its consideration by the trial court.

Although not raised in her list of issues in the statement of questions presented portion of her appellate brief, Mother also argues that the trial

judge should have recused himself from this case. Mother's Brief at 11. Mother alleges that she previously appeared before the same trial judge in criminal matters in 2007-2008 and contends that the judge was not impartial in this custody matter. *Id*.

Regarding challenges to the trial court's authority and suggestions that recusal was appropriate, we have stated the following:

> It is the duty of the party asserting disqualification to file the petition in a timely fashion. *Rizzo v. Haines*, 555 A.2d 58, 70 (Pa. 1989). A recusal motion that is not timely filed will be denied. *Id*. "It is well-settled that a party seeking recusal or disqualification **must raise the objection at the earliest possible moment**, or that party will suffer the consequence of being time barred." *Commonwealth v. Stafford*, 749 A.2d 489, 501 (Pa. Super. 2000) (quotation marks and citations omitted) (emphasis added). In addition, it is an appellant's obligation to demonstrate which appellate issues were preserved for review. Pa.R.A.P. 2117(c), 2119(e).

*Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa. Super. 2013).

Our review of the certified record reflects that Mother failed to seek disqualification of President Judge Masson at any time prior to this appeal. Likewise, Mother has failed to demonstrate where she has preserved this issue for appellate review. Accordingly, we are constrained to conclude that this issue is waived.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/2/2016</u>

# IN THE COURT OF COMMON PLEAS OF THE FIFTY-NINTH JUDICIAL DISTRICT OF PENNSYLVANIA

E████ R██████,                    *    COUNTY BRANCH - ELK
                  Plaintiff       *
                                  *
        vs.                       *    CIVIL
                                  *
D████ D████ (f/k/a D████████      *
R█████,                           *
                  Defendant       *    NO.  2007-673

Pending before the Court is the pro se petition to modify custody filed by defendant, D████ D████ (formerly known as D████ R████, on October 14, 2014. In her petition, defendant has sought to modify the custody provisions set forth in the March 11, 2013 Order of Court which adopted and approved the February 7, 2013 stipulation entered into by the parties with regard to the custody of the subject minor child, P████ E██████ R████, age 7, born January ██, 2008. The February 7, 2013 stipulation included provisions for the parties' equal sharing of legal and physical custody and the stipulation specifically referenced that P█████ would attend school in the St. Marys Area School District and that defendant would relocate to the St. Marys Area School District. Moreover, both parents were represented by counsel when the stipulation was entered.

At the time of the June 23, 3015 hearing conducted on the modification petition, plaintiff E██ R████, appeared and was represented by Attorney Thomas G.G. Coppolo, and defendant D████ D████ (f/k/a D████ R████) appeared pro se. The evidence introduced at time of hearing consisted of the testimony of plaintiff E██ R████; defendant D████ C. D████; Pastor P████ W. S██████ of the First Presbyterian Church of Emporium, Pennsylvania; maternal grandmother H████ D████; and paternal stepmother S██████ R████. Documentary evidence was also introduced in the nature of the custody evaluations and bonding assessments conducted by licensed psychologist Daniel Kysor, school rankings for South St. Marys Elementary School and Woodland Elementary School, P█████'s final report card for 2014-15 and an internet article regarding the use of alcohol by those who may be prescribed methadone.

1





## DISCUSSION

Section 5338 of the Child Custody Act, 23 Pa.C.S.A. 5321-5340, provides that upon petition, a trial court may modify a custody order if it serves the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super 2006) (citing *Arnold v. Arnold*, 847 A.2d 674,677 (Pa. Super. 2004)). The Court must determine "the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which effect the safety of the child," and must consider the statutorily-defined factors set forth at 23 Pa.C.S.A. 5328(a). *J.R.M. v. J.E.A. 33 A.3d 647, 652 (Pa. Super. 2011)*. The paramount concern is the best interests of the subject minor child and all other considerations are subordinate to the child's best interests, including the interests of the adults who may be parties to the action. *Jackson v.Beck, 858 A.2d 1250 (Pa. Super. 2004)*.

In assessing the evidence presented during the hearing held on the pending petition to modify, the Court has directed its focus upon the best interests of P█████ E█████ R████. In the process of evaluating the evidence, the Court had the opportunity to view the demeanor and countenance of the parties, to determine the credibility of all witness, and to weigh the evidence, all of which has been duly considered. The Court accordingly enters the following general findings pursuant to Pa.R.C.P. 1920.52.

## FINDINGS OF FACT

1. **Status of the Parties**

   Plaintiff E███ R████ (hereafter "father") and D████ D████ (formerly R████)(hereafter "mother"), are the natural parents of the subject minor child, P█████ E█████ R████, age 7, born January ██ 2008, (hereafter "the child" or "P█████"). Mother and father were married on October 28, 2005, and were divorced by decree dated June 4, 2009. As P█████ was born on January ██, 2008, she was born in wedlock.

   Following the parties' divorce, father married S██████R████, with whom he has two children, twins S███R█████ and S█████ R████, both age 7. Mother established a long-term relationship with B██ S████, who cohabitated with her from time-to-time over

an approximate three-year period until the relationship ended in March 2015, following which S██ established a residence in Florida.

2. **Parties' Residences**

Father owns the house at ██Walnut Street, St. Marys, Pennsylvania, where he, his current wife, S██████ R████, his step-son C████ B███, age 10, the twin children of father and S██████ R████, S████ and S███ R████, both age 7, and P████ live. The house is a two-story residence with three bedrooms, two bathrooms, a dining room, living room, playroom, and laundry on a 100 x 50 foot lot.

Mother rents a 2-bedroom trailer at ██East 2nd Street, Emporium, Pennsylvania, where she lives with P████ when mother maintains custody of her daughter. Until March 2015, mother's boyfriend, E██ S███, also lived at the residence. S███ was described as a handyman who received disability benefits. He and mother were involved in a long-term relationship lasting some three years, which ended when, according to mother, she discovered that S███ was abusing drugs and he moved to Florida.

Despite mother's assertion that she keeps a clean household and father's household is in disarray, her infrequent and sporadic visits to father's residence during which she determined that the condition of his residence was messy was not supported by any objective evidence. Father acknowledged that his residence is cluttered from time to time, but not dirty. Therefore, the physical characteristics of both parents' residences are appropriate and there was no evidence of any materially adverse environmental factor or other physical household issue which would have a deleterious effect upon the child.

3. **Parties' Employment and Income**

Neither parent is employed. Father has received disability benefits for the past four years as a result of leg and back conditions. Mother is also disabled due to shoulder issues, but indicated that she would be eligible to have her nursing license reinstated in December 2015 following a period of suspension after she had entered a guilty plea to an offense involving her having altered a prescription for Vicodin

Neither mother nor father disclosed the amount each receives in disability benefits, but an allowance paid on behalf of P████ was the focus of testimony provided by both parties. Mother indicated that she had been receiving $86 a month on behalf of P████, but the recipient of the benefits was changed by father as the representative

3

payee. Mother believes father has been receiving $400 a month in disability benefits attributed to P████. The disability benefits allotted to P████ is derivative of father's disability benefits and those benefits are being held in escrow until such time as the issue of custody has been addressed, such that neither parent has been receiving benefits on behalf of P████ of late.

In addition to the disability benefits in an undetermined amount which are paid to father, father's current wife, S████ R████ contributes to father's household income by virtue of full time employment as a secretary at Allegheny Coatings in Ridgway, Pennsylvania. However, the amount of her income was not introduced of record.

Although not established with any degree of specificity, the financial resources available to both parents is adequate to provide for P████ needs and there was no evidence that either parent was unable to pay for essentials for P████ or that she has been deprived of any necessaries.

4. **Parents' Education**

Father graduated from St. Marys Area High School in 1998 and attended college for one semester. Mother graduated from Glasgow High School in Delaware in 1997 and received an Associate's Degree in nursing from Del Tech.

Both parents have the required educational background and abilities to provide P████ with the necessary academic support and to assist her in school assignments.

5. **Child's Education**

At the time of the June 23, 2015 hearing, P████ had completed first grade at the South St. Marys Street Elementary School in St. Marys, Pennsylvania, and had been promoted to second grade. She did very well in school, with her lowest grade in any of her core class curriculum being a 96 in English. She received 97's in Reading, Science, Health, and Social Studies, a 98 in Math and a 100 in Spelling as her final grades in those subjects (Plaintiff Exhibit 3).

Father is engaged in P████'s education and given the proximity of his residence to that of the school, he frequently walks P████ to school in the morning. He attends parent/teacher conferences, open house, school plays and school book fairs and has communicated with P████ principal, teacher and guidance counselor about enrolling P████ in an enrichment program. Mother is also pro-active with P████'s school work,

4

including insuring that P████ gets her homework finished. Mother has also engaged in school activities and addressed an issue regarding P███ being the target of bullying with school administration.

The evidence demonstrates that P███ does very well in school. She displays no kind of aberrant behavior at school, having received satisfactory grades in all areas of Teacher Observation.

While not materially compelling, a comparison of school ratings introduced by plaintiff (plaintiff Exhibits 1 and 2) yielded 2014 statewide elementary school rankings 383 for the South St. Marys Street Elementary School and 420 for the Woodland Elementary School in Emporium, Pennsylvania, the school P███ would attend if she lived primarily in Emporium. The rankings were based on a total of 1,422 Pennsylvania Elementary schools.

## 6. Child's Religious Training

Mother has been actively involved attending the First Presbyterian Church in Emporium, Pennsylvania, for the past year and has taken P███ to church on a number of occasions. Pastor P███ W. S███ observed that P███ seems to enjoy church and exhibits an interest in church, but that there is at present no Sunday School program available P███.

Father does not attend church, but indicated that because P███ appears to enjoy attending church, he has afforded her the opportunity to go to church with mother on Sundays during father's periods of physical custody.

## 7. Extended Family and Sibling Relationships

Mother's brother, B███ D███, and his six-year-old son live in Emporium, Pennsylvania, while mother's two sisters live in Bear, Delaware. Maternal grandmother, H███ D███, also lives in Millsbarrow, Delaware. Therefore, the family member in closest proximity to mother and P███ is B███ D███ as he and his son live in the same town as mother.

Father's extended family resides primarily in the Elk County area. Paternal grandparents, L██ and D███ R███, live in St. Marys, Pennsylvania, while father's in-laws, M███ S███ and D███ K███, also live in St. Marys. Paternal aunt, S███ C███, lives in Kersey, Pennsylvania. Significantly, P███'s half-siblings, S██ and

5

S███ R███, also reside in father's Walnut Street, St. Marys, Pennsylvania residence. The relationship between P███ and her half siblings was found to be normal for seven year olds, mother's positing to the contrary notwithstanding as both mother's and maternal grandmother's assertions that P███'s half-sister S███ has been physically aggressive towards P███ was not corroborated by any objective evidence. Finally P███ was described as having a very close relationship with her step-brother, C███ B███.

8. **Mental and Physical Conditions of the Parents**

   a) **Physical Health**

   As set forth hereinabove, both mother and father are currently disabled, but neither of their disabilities limit them from engaging in effective parenting of P███.

   b) **Mental Health**

   In the course of conducting the custodial evaluations (Court Exhibit 1), Daniel F. Kysor, a licensed psychologist, administered testing assessments and also made direct observations of the parties, the child and the parties' interactions with P███. Both mother and father were administered the Wechsler Adult Intelligence Scale-IV (Wechsler), the Kaufman Test of Educational Achievement-II (Kaufman) and the Minnesota Multiphasic Personality Inventory-II-Restructured Form (MMPI-II-RF). Kysor also utilized a comprehensive parenting tool to assess the parties' abilities to properly parent P███. Father's score on the Wechsler scale was in the average range at the 27th percentile. He also obtained average scores in the verbal area. His working memory was deficient and his abstract reasoning was low average. Mother obtained a Wechsler score in the average range at the 39th percentile. Her verbal area score was in the high average while her working memory, abstract reasoning and speed of task completion were in the average to low average range.

   The Kaufman test results attained by father indicated that he is functioning in the low average level in reading, written expression, and math with the measured results being similar to that of a middle school student. Mother's Kaufman test led to an indication that she is functioning in the low average level in math and at the post-high school level in reading and written expression.

6

Father's MMPI-II-RF results yielded somatic complaints including head pain and neurological symptoms and an indication that he may develop physical symptoms in response to stress. There were no abnormal results indicative of any organic or psychological disorder, but treatment considerations were indicated for father's pain management. Mother's MMPI-II-RF results raised concerns about the possible impact of her under reporting on the validity of the assessment. Somatic complaints related to head pain and issues relating to previous juvenile conduct problems were indicated. She too was found to be prone to the development of physical symptoms in response to stress and treatment considerations for pain management were also indicated for her. Despite the compromise of the protocol validity by her under reporting, there were no apparent atypical conditions or issues which were determined.

The comprehensive parenting tool utilized by Dan Kysor led him to determine that father possesses fair to good social judgment and other positive traits relevant to effective parenting. Mother also displayed good to fair social judgment as a result of Kysor's utilizing a comprehensive parenting tool with her and she also demonstrates the capacity to promote and maintain the welfare of P███ and to be an effective parent.

As a result of Dan Kysor's observations and assessments of mother and father, he developed clinical impressions for both. Father was attributed an Axis I impression of adjustment disorder. While Kysor referred to the clinical impression of possible drug addiction in remission, he provided no substantive basis for that determination. There was no question but that father does occasionally drink alcoholic beverages and is also prescribed methadone and Percocet, but there was no evidence that he currently presents with any kind of substance abuse issues. Father's Axis III impression was that of disability due to back issues and on Axis IV, father presented as exhibiting stress due to the pending custody proceeding. Kysor's clinical impression of mother was that on Axis I, she presented with an impression of drug abuse in remission by reports since 2006 and bipolar disorder by report. While mother's history includes reference to substance abuse, as with father, there was no evidence of any use of controlled substances which compromised parenting abilities

7

or jeopardized the health, safety, and welfare of P████. Her Axis III impression was that she was disabled due to shoulder issues and she, like father, presented an Axis IV impression of stress due to the issues of child custody.

There was no material evidence that either father or mother presented with any kind of mental health disorder which would militate against them continuing to effectively parent P████ and similarly, there was no evidence that any past disorder had in anyway compromised P████'s best interests.

## 9. Child's Psychological Profile

On December 7, 2014 and January 7, 2015, P████ was assessed by Dan Kysor in the context of both mental health status and her bonding attachment to her parents. She first appeared with father and during that appointment, Kysor noticed that her interaction with father was good and was "good and positive." During her second appearance before Kysor when she accompanied mother, Kysor found that she responded to her mother in an "affectionate manner, without prompting."

P████'s affect was upbeat and excited when she was with mother and somewhat more restrained and controlled when present with her father. However, there were no perceptual disturbances or psychotic patterns noted, nor were there any signs or symptoms of any disorders whatsoever.

P████ was administered the Wechsler Intelligence Scale for Children-IV Edition. Her intellectual ability was found to be in the high average range and her working memory was noted to be average. The Kaufman test was also administered to P████ to assess her current achievement levels. Those results were consistent with her measured intellectual ability and indicated that P████ is functioning within the high to average range in all areas of achievement.

While Kysor found that P████ has bonded with both her parents, he determined that she demonstrated a strong bond with mother and a more restrained bond with father. Kysor also recited P████'s preferences as expressed to him as well as his recommendation based on his assessments, all of which have been considered by the Court and attributed the appropriate weight but Kysor's impressions, findings and recommendation are in no way controlling, let alone dispositive.

8

## 10. Performance of Essential Duties

Both parties have performed essential duties for P████ and have addressed her moral development and educational progress.

## 11. Current Best Interests

The evidence clearly established that the current physical, intellectual, moral and spiritual well-being of P████ will be met by mother and father continuing to share physical and legal custody as provided in the court order entered as the order of disposition for the pending custody modification petition.

## STATUTORY FACTOR FINDINGS

In conjunction with the foregoing general findings, the Court also enters the following findings in accordance with 23 Pa. C.S.A. 5328(a).

1. Factors (a)(8) and (a) (12) are non-factors.

There was no evidence of any attempt by either parent to turn P████ against the other parent. Additionally, adequate child care is provided by both parents when P████ is in their custody as both parents are disabled and neither has any employment or other commitments requiring that they be absent from direct supervision of P████ for any extended period.

2. Factors (a)(1), (a)(2), (a)(2.1), (a)(3), (a)(9), (a)(10), (a)(11), (a)(13), (a)(14), (a)(15), and (a)(16) are equally weighted.

The evidence demonstrated that both parties permit frequent and continuing contact between P████ and the other party and have from time to time accommodated requested deviations in the existing custody schedule to allow P████ to engage in activities with the non-custodial parent such as father allowing mother to take P████ to church on father's Sundays. Mother has included father and his family members in birthday celebrations for P████ Both have acquiesced to the other parent taking P████ on trips, with mother taking P████ to Delaware and Florida during periods of father's custody and father taking P████ to an amusement park.

While mother filed a petition for protection from abuse against father on February 4, 2011, to No. 2011-199 of the Cameron County Branch of this Court and a temporary protective order was entered that date, mother orally moved to withdraw her petition at

9

the time of the hearing on the petition. The motion was granted, the petition withdrawn and the temporary protective order of February 4, 2011, was vacated. There was thus no adjudication of mother's claims and no finding of any abuse perpetrated by father.

Both parties have had contact with local child protective service agencies, but no incidents of abuse were founded nor were any services recommended or offered. Elk County Children and Youth Services investigated a report that father permitted P████ to go to Luhr Park without supervision. Father acknowledged he had allowed P████ to go to the park which is some one hundred yards from his residence, but that she was always in the company of her step-brother and/or half-brother and sister and father had a direct sight-line from his house to the park. After conducting an investigation, Elk County Children and Youth Services determined that no case would be opened and no services were warranted. Prior to moving to her current residence, mother lived in an apartment in Emporium for about five years and Cameron County Children and Youth Services investigated the apartment conditions but found no circumstances requiring further contact or the implementation of services. During this investigation, father was reported to have wanted to contact Cameron County Children and Youth Services to let the agency know that he thought mother was a good mother.

Both father and mother perform the parental duties required to keep P████ safe and healthy and to promote her best interests. Similarly, both parents are equally likely to maintain a loving, stable, consistent and nurturing environment for their daughter as both have done so for extended periods of time.

Since mother and father are available throughout the day given that both are disabled and do not work, the attention paid by them to P████'s physical, emotional, developmental, and educational needs are the same. No special needs of P████ were identified.

The distance between father's residence in St. Marys and mother's residence in Emporium is about twenty miles and that proximity promotes each parent's ability to maintain frequent contact with P████, but it is impractical for mother to transport P████ from Emporium to attend school in St. Marys, Pennsylvania.

Both parents indicated that they have been able to co-operate with one another and that the level of conflict has been neutral for the most part, but the pending custody

10

litigation has exacerbated stressors on co-parenting, although both converse during custody exchanges and at other times as necessary.

Substance abuse issues were identified for both parents, but at present, no drug usage has been demonstrated which has compromised either parent's ability to effectively parent P██████. Mother acknowledged an addiction to drugs prior to P█████'s birth, but has maintained sobriety for at least the last seven years. She continues to attend AA and NA meetings and has taken P█████ to the meetings to ostensibly teach her about substance abuse. This is a curious approach in light of P█████'s age, but there was no evidence that P██████ has any adverse reaction to her attending the meetings.

The reason promoted for mother ending her relationship with E██ S█████ in March of this year after she learned he was using drugs in somewhat circumspect, but there was no evidence whatsoever that S████'s drug usage occurred at any time when P█████ was present. Father has been prescribed both Percocet and methadone for five years to address chronic low back and left leg pain. He indicated that his methadone prescription is a low dose of 5 to 10 mg and there was no evidence that the methadone had been prescribed for anything but pain. Father, also testified that on the weekends, he will drink three to four beers over a five to six hour period. While mother promoted that father's drinking alcohol which taking methadone was contra-indicated and a display of poor judgment, the evidence in support of mother's position in the nature of an internet article (defendant Exhibit A) was ineffectual when not presented with any corroborative evidence of father's dual usage which compromised his functioning as a parent.

The mental and physical conditions of the parents are discussed in the general findings hereinabove and no condition of either parent detracts from their parenting abilities. There was no evidence of any adverse mental or physical condition attributable to S██████ R████.

3. The (a)(5), (a)(6) and (a)(7) factors are weighted in favor of father.

Mother's evidence regarding her inability to locate housing in St. Marys was disingenuous. In March 2013, when represented by counsel, she stipulated to P█████ attending school in St. Marys beginning with kindergarten and to her relocating to St. Marys. P█████ has indeed attended South St. Marys Street Elementary School for the past two years and done very well in school. There was certainly no evidence to suggest

11

let alone demonstrate that any change in P████'s academic setting would be in her best interests. To the contrary, a change in schools would likely destabilize P████'s educational progress.

Similarly, the only reason presented by mother to explain why she had not relocated was that she could not afford to. However, there was no evidence presented by her to compare relative housing costs in Emporium and St. Marys nor was there any evidence of any material change in her income. Rather, the evidence suggests that despite her clear representation that she would re-locate, self interests prevailed, including her continued relationship with E██ S███ which only ended during the pendency of this modification petition. Father is the parent most likely to insure the stability in P████'s education, family life and community life. As set forth in the general findings, P████ has greater opportunity to maintain sibling relationships with father. P████ is mother's only child, while father's twin children and hence P████'s half-brother and half-sister, S███ and S███ R███, reside with father as does P████'s step-brother, C███ B███.

Most of P████'s paternal extended family live in and around St. Marys while only a maternal uncle and P████'s cousin live in Emporium. The other extended members of mother's family live in Delaware, including maternal grandmother and maternal aunts. The distance factor alone results in P████ having greater opportunity to interact with members of father's family on a consistent basis.

4. Other relevant factors which include P████'s spiritual development and the criminal records of the parties.

After inquiring of the First Presbyterian Church in Emporium in early 2014 whether the church could assist her in paying her rent, mother became active in attending church, including regular services and Bible study class. She began taking P████ to church with her, which father permitted although the services were during his period of physical custody. Although father does discuss religious issues with P████, he does so on a much more informal basis and thus the spiritual development of P████ is weighted slightly in favor mother.

Contact with the criminal justice system is weighted slightly in favor of father, who has no criminal record. Mother presents with a criminal history which includes a

12

2007 guilty plea for a violation of the Drug, Device and Cosmetic Act, graded as an unclassified misdemeanor, a 2007 guilty plea to a summary offense of harassment, a 2008 guilty plea to a misdemeanor two simple assault and a 2008 guilty plea to an ungraded misdemeanor driving after imbibing offense which resulted in a three-day to six month sentence of incarceration. The criminal incidents occurred in a relatively compressed time period in 2007 and 2008, including two within months of P████'s birth, but since then Mother's criminal record is clean, notwithstanding evidence regarding a May 2015 incident involving a confrontation with her aunt which resulted in charges filed before Magisterial District Judge Barry D. Brown.

Despite the want of substantial, cogent and compelling evidence, both parents are undoubtedly positive parental forces in P████'s life and are expected to continue to promote her best interest in the future by continuing to maintaining constant contact with her.

By the Court:

Richard A Masson, President Judge

August 11, 2015

13